### TYDEN v. OHIO TABLE CO. et al.

#### (Circuit Court of Appeals, Sixth Circuit. March 18, 1907.)

#### No. 1,598.

1. PATENTS—INFRINGEMENT—LOCKING DEVICE FOR TABLES.

   The Tyden patent, No. 675,577, for a locking device for pedestal tables, claim 1, is void as too broad and substantially for a function. The remaining claims, while disclosing invention and valid as improvement claims, are of narrow scope and limited to the specific device shown. As so construed, *held* not infringed.

2. SAME.

   The Wilhelm patent, No. 736,327, for a locking device for pedestal tables, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

C. S. Burton, for appellant.
H. Frease, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is a suit for alleged infringement of two patents, one issued to C. Wilhelm, August 11, 1903, and the other to E. Tyden, June 4, 1901. The Wilhelm patent has been assigned to Tyden. Both patents are for improvements in locking device for "pedestal tables." It is averred that the claims sued upon, being claims 1 and 2 of the Wilhelm patent, and 1, 2, 3, 4, 14, 15, and 16 of the Tyden patent, are capable of conjoint use, and that same have been so conjointly used by the defendants, who are operating under two later patents, one of October 16, 1904, to J. F. Arnold for an extension table lock, and one of December 27, 1904, to same party for an extension table. The defense was invalidity of complainant's patents and noninfringement. The court below sustained the patents, but held that they had not been infringed. A pedestal extension table was old. Tyden describes such a table as "a table which, when closed up without the ex-

tension leaves, have a support consisting of a central pedestal with spreading feet at the base, the pedestal being vertically divided, and one part pertaining to each of the two parts of the table top, and having rigid with it two of the feet." He then says that in such tables a center leg, attached to a crossbar connecting opposite slides pertaining to the extension devices, is inclosed within the two parts of the pedestal, which is hollow for the purpose. The difficulty which he set himself to remedy in these well-known tables was, that the pedestals when closed did not close tightly so as to present a solid and workmanlike appearance. "My invention," says the patentee, "consists of means for locking the two parts of the pedestal together in such manner as to close them up from top to bottom. * * * " His first claim is an exceedingly broad one, claiming, as it does, every means which involve an element on each part and below the top of the pedestal. It is in these words:

"A pedestal extension table, in combination with a vertically-divided pedestal and the two separate parts of the table top attached to the respective parts of the pedestal, means for binding the pedestal parts together, comprising an element on each part at a substantial distance below the top of the pedestal, and means whereby they are adapted to be connected when the pedestal parts approach; means for operating on said elements after they are connected to cause them to bind the pedestal parts together, extending from said elements upward, and thence under the table top toward the margin thereof."

The second claim is for specific means for accomplishing this end. It is in these words:

"In a pedestal extension table, in combination with a vertically-divided pedestal and the two separate parts of the table top rigid with the parts of the pedestal respectively, a locking device for connecting the two parts of the pedestal together, comprising two mutually engaging elements, one on each part of the divided pedestal, said elements being adapted to become engaged before the pedestal parts are fully closed together; one of the said locking elements being movable on the part of the pedestal to which it pertains, and operating connections by which it may be moved in direction to draw the parts of the pedestal together."

The other claims in issue cover slight differences in means described, and need not be set out.

A vertically-divided pedestal, hollow and inclosing a central leg when closed, this center leg being the support for the center of the table when extended, one-half of the pedestal being rigidly attached to each of the movable members of such a table, was old. Means intended to draw these two parts of the pedestal together and hold them in contact were well known. That they did not do this in such manner as to make a tight joint and prevent an unfinished appearance is shown. That Tyden has provided a locking device which is an improvement upon the old devices for the purpose, and with better results, is the best which can be said for him. Examples of the devices of the old art used to accomplish the same purpose are to be seen in the old Briggs patent of 1843 and the Thorn patent of 1851, also the Hoffmeier patent of 1881. Devices in analogous arts performing the same function of drawing two parts closely together and holding them so were very common. For furniture locks, see patent No. 22,456, to Robinson; No. 139,844, to

Wolf; No. 475,581, to Liebe; and that to Wilen, 552,026. For sash locks or fasteners, see patent to Christie, 160,509; No. 162,614, to Breckenridge; patent to Ives, No. 317,540. A sash fastener made by Hastings is admitted to be substantially identical with sash-fastener devices employed before Tyden's invention as a means for holding together the lower ends of divided pedestals on extension tables. The lever, C, of the Tyden device is identical with the lever or brake bar in the patent to Jones, 608,865, for a vehicle brake. What Tyden did was to combine old and well-known means for locking two parts and holding them tightly together and adapt them to the ornamental pedestals of tables. The field was a narrow one, and his device is not generic. Confined to the specific means he has shown for doing the thing he set out to do, his patent covers a step which is but an improvement, but a patentable one. This does not apply to claim 1. That is not limited. It claims all means for locking and holding such pedestals, and is substantially a claim for a function. It cannot be upheld, and must be held void. We agree with the court below in holding that, thus limited, the other claims are not infringed. We also agree in the conclusion that the claims of the Wilhelm patent are not infringed.

Modified so as to hold claim 1 of the Tyden patent void, as too broad, and for a function rather than a device, the decree of the Circuit Court will be affirmed.